UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHELLE M., DONALD M., SR.,
and DONALD M., JR., by and
through his guardian ad litem,
DONALD M., Sr.,

                No. 2:04-cv-2411-MCE-PAN

      Plaintiffs,

     v.                   MEMORANDUM AND ORDER

DUNSMUIR JOINT UNION SCHOOL
DISTRICT, ROBERT MORRIS,
individually, CHRISTOPHER
RAINE, individually, ANTHONY
PAGANINI, individually, PAULA
SCHMITT, individually, and
DOES 1 through 15, inclusive,

      Defendants.

----oo0oo----

In this action, Plaintiff Donald M., Jr., a minor
("Donnie"), through his guardian ad litem, Donald M., Sr., seeks
both damages and appropriate injunctive and declaratory relief
from Defendant Dunsmuir Joint Union School District ("DJUSD").
///
///

1

The minor Plaintiff's parents, Michelle M. and Donald M., Sr., are also named parties to the lawsuit,[1] as are certain individuals associated with DJUSD.

Plaintiffs allege that Donnie was subject to peer sexual harassment, and that Defendants' failure to protect Donnie from that activity deprived Plaintiffs of their rights under 20 U.S.C. § 1681 ("Title IX") as well as their rights under 42 U.S.C. §§ 1983 and 1985(3).  In addition, California statutory claims pursuant to the Unruh Civil Rights Act, Civil Code § 51, et seq., are asserted.

Defendants[2] now move for summary judgment, of alternatively for summary adjudication of witnesses.  As set forth below, while summary judgment is denied, Defendants' request for partial summary judgment will be granted in part and denied in part.

For the reasons set forth below, Defendants' Motion is granted in part and denied in part.[3]

///

///

///

///

---

[1]Unless otherwise specified, all three Plaintiffs will be collectively referred to as "Plaintiffs" in the remainder of this Order.

[2]While the Court generally uses the term "Defendants" to refer collectively to all named defendants in this matter, as set forth below the liability of Defendants Raine and Paganini will be separately considered.

[3]Because oral argument would not be of material assistance, this matter was deemed suitable for decision without oral argument.  E.D. Local Rule 78-230(h).

**BACKGROUND**[4]

Donnie, then a freshman at Dunsmuir High School, claims he was sexually harassed at school by another classmate, Jordan S., beginning in approximately October of 2003.  During math class, Jordan S. asked Donnie to expose his penis on numerous occasions through messages typed into a graphing calculator, and through several follow up entreaties questioning why Donnie wouldn't "show" him.  Donnie's rejections caused Jordan S. to frequently twist Donnie's arm during class over a two to three week period, particularly during periodic occasions when the instructor was out of the classroom.  (See Donnie Dep., pp. 42-54)  In addition, Donnie contends he had two additional confrontations with Jordan S. while walking through the high school gym enroute to band class.  On both of those occasions, according to Donnie, Jordan S. repeated words to the effect of "who won't you show me" and proceeded to grab and twist Donnie's arm when he refused to assent to Jordan's propositions.  (Defs.' Undisputed Fact ("UF") No. 23).

Donnie also alleges that prior to the commencement of Jordan S.' taunts in math class, during a visit to Jordan's house in mid-October of 2003, Jordan had offered to give Donnie some magic cards if Donnie would show Jordan his penis.

---

[4]The facts recited below, and those mentioned elsewhere within the body of this Memorandum and Order, are the only facts relied upon by the Court in ruling on Defendants' Motion herein. The Court need not rule on extensive evidentiary objections to facts not deemed essential in disposing of this motion, and declines to do so unless otherwise noted.  To the extent objections have been made to the factual matters set forth in this section, those objections are overruled.

(Donnie Dep., 27:8-15).  Donnie further claims that Jordan ran a knife over his body when Donnie did not consent to Jordan's advance, which Jordan reiterated at least five times.  (Donnie Dep., 32:21-36:6).

On or about October 22, 2003, Donnie's mother, Plaintiff Michelle M., reported Jordan S.'s conduct to Donnie's school counselor, Defendant Paula Schmitt, who told Michelle M. that she would report the alleged harassment to DJUSD Superintendent (and Dunsmuir High School Principal) Robert Morris, who also has been named as a Defendant in this action.  Neither Donnie or his parents had previously reported Jordan S.'s conduct to school personnel.  There is no competent evidence that any teacher or other school employee witnessed the alleged harassment. Moreover, there is no dispute that any direct verbal or physical harassment directed to Donnie from Jordan S. had stopped by the time the alleged harassment was reported to school authorities.[5] At most, the only continuing harassment was described by Donnie in his deposition as consisting of Jordan following him around, and relaying purported threats through others.  (Donnie Decl., ¶¶ 2-3)  In addition, Donnie claims that other students teased him after finding out about the accusations Donnie leveled against Jordan S.  This additional indirect harassment was not reported to the school, and for the most part was not even mentioned by Donnie during his deposition.[6]

---

[5]See Donnie Dep., 62:3-11; 71:20-23.

[6]While Donnie did testify generally in his deposition about other Dunsmuir High School students teasing him about his
(continued...)

4

1   Defendants contend that after learning of Jordan's alleged

2   harassment, they took various measures to prevent further

3   incidents from occurring, including meeting with the involved

4   parties, advising the teaching staff of the potential problem,

5   and eventually preventing Jordan and Donnie from sharing any

6   classes at the end of the semester when it became practicable to

7   do so.[7]  Defendants argue that these measures were successful

8   given Donnie's admission at deposition that he suffered no

9   further harassment at Jordan's hands after school authorities

10  were notified of the issue.

11   School authorities nonetheless took no direct action

12  against Jordan aside from a suggestion, by Defendant Morris, that

13  Plaintiffs report the harassment in question to the Siskiyou

14  County Sheriff for investigation.

15  ///

16  ///

17  ///

18

19  _____

20      [6](...continued)
    interaction with Jordan S. (See Donnie Dep., 90:20-91:8), Donnie
    did not testify about the alleged stalking and indirect threats
21  he now identifies by way of declaration filed in opposition to
    Defendants' Motion.  Defendants urge the Court to disregard
22  Donnie's declaration on grounds that inconsistencies between
    sworn deposition testimony and subsequent declarations should be
23  resolved by striking the inconsistent declaration.  See Cleveland
    v. Policy Mgt. Sys. Corp., 526 U.S. 795, 806 (1999); Block v.
24  City of L.A., 253 F.3d 410, 419 n. 2 (9th Cir. 2001).  As set
    forth below, however, because disposition of the instant motion
25  does not hinge on the contents of Donnie's declaration, it is not
    necessary to rule on any inconsistencies it may contain at this
26  juncture.

27      [7]According to Defendants, the small size of Dunsmuir High
    School made it all but impossible to make the necessary transfers
28  beforehand.

5

Although Donnie's parents demanded that Jordan S. be removed from the school, Defendant Morris allegedly refused, even though another parent, Allen Edwards Sr., had made the same request during the previous 2002-03 school year as a result of harassment from Jordan directed to his son, Allen Edwards Jr. (Allen Edwards Sr. Dep., pp. 60-62).  Mr. Edwards told Morris that he intended to obtain a restraining order against Jordan S. due not only to Jordan's continual stalking of his son, but also because Jordan had threatened his son's life.[8]  (Id. at 60-62, 65).

    The evidence further suggests that school counselor Schmitt was similarly aware of prior problematic behavior on Jordan's part.  Allen Edwards Sr. testified that he had also discussed Jordan S.' interaction with his son with Ms. Schmitt on one or two occasions.  (Id. at 33:8-22).  Defendant Schmitt told Mr. Edwards that there was an "ongoing problem" involving Jordan S. and that his son "wasn't the only one experiencing this."  (Id. at 35:1-4).

    Despite school personnel's knowledge of Jordan's apparent proclivity to obsessive behavior towards other students of the same sex, the school refrained from including within the parent handbook its own previously adopted sexual harassment policy prior to commencement of the 2003-04 school year, just after which Jordan's unsatisfactory interaction with Donnie began.

///

///

///

---

    [8]Ultimately Mr. Edwards and his wife did obtain a temporary restraining order against Jordan S.  (Pls.' UF No. 92).

1    The sexual harassment policy specifically required that a copy of
2    the policy and accompanying regulations "[b]e included in the
3    notifications that are sent to parents/guardians at the beginning
4    of each school year." (See Sexual Harassment Policy, Ex. 2 to
5    Dep. of Robert Morris, as attached within Ex. 5 to the Decl. of
6    Gay Carroll).  Plaintiff Michelle M. states that as a parent of a
7    Dunsmuir High School student for the 2003-04 school year, the
8    handbook she received did not include either the DJUSD sexual
9    harassment policy or administrative regulations.  (Decl. Of
10   Michelle M., ¶ 7).  In fact, the handbook she received stated on
11   its back cover that certain policies, including the sexual
12   harassment policy, were not included within the handbook for
13   budgetary reasons.  (See id., ¶ 8).   This failure to furnish
14   copies of the sexual harassment policy was also brought to
15   Defendant Morris' attention by at least one parent during 2003,
16   but no apparent action to rectify the situation was taken.
17   Despite Morris' admission that the policy was not included within
18   the handbook.  (Morris Dep., 112:11-114:17).

19       Juvenile court proceedings instituted against Jordan S. in
20   the Siskiyou County Superior Court ultimately resulted in a
21   restraining order against Jordan S.   (Pls.' UF No. 47).
22   Michelle M. again requested that Jordan S. be removed from school
23   at that point, but Morris failed to do so.  (See id. at No. 46).
24   Plaintiffs thereafter took their son out of school and enrolled
25   him in an at-home independent study program.  Only after that
26   time, according to Plaintiffs, did Defendants finally transfer
27   Jordan S. out of the high school and into a community day school.
28   (See Michelle M. Decl., ¶ 6).

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also* Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party.  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

///

///

///

1  Once the moving party meets the requirements of Rule 56

2  by showing that there is an absence of evidence to support the

3  non-moving party's case, the burden shifts to the party resisting

4  the motion, who "must set forth specific facts showing that there

5  is a genuine issue for trial." Anderson v. Liberty Lobby, Inc.,

6  477 U.S. 242, 256 (1986).  Genuine factual issues must exist that

7  "can be resolved only by a finder of fact, because they may

8  reasonably be resolved in favor of either party." Id. at 250.

9  In judging evidence at the summary judgment stage, the court does

10  not make credibility determinations or weigh conflicting

11  evidence. See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809

12  F.2d 626, 630-631 (9th Cir. 1987), citing Matsushita Elec. Indus.

13  Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

14

15                            **ANALYSIS**

16

17  **1.   Title IX Claims**

18

19       In their Third Claim,[9] Plaintiffs allege that DJUSD violated

20  the provisions of Title IX, 20 U.S.C. § 1681, in subjecting

21  Donnie to sexual harassment.  Plaintiffs allege the same

22  violations, with respect to the individual defendants. in their

23  First Claim through 42 U.S.C. § 1983.

24  ///

25  ///

26

27       [9]All references to Plaintiffs' claims in this Memorandum and
   Order refer to the Claims for Relief asserted in Plaintiffs'
28  First Amended Complaint for Damages, filed January 10, 2005.

1    Title IX provides, with certain exceptions not relevant
2    here, that "[n]o person in the United States shall, on the basis
3    of sex, be excluded from participation in, be denied the benefits
4    of, or be subjected to discrimination under any education program
5    or activity receiving federal financial assistance."  20 U.S.C. §
6    1681(a).  There is no dispute that DJUSD receives federal funds
7    for Title IX purposes, and hence is subject to its provisions.

8        In Davis v. Monroe County Bd. of Educ., 526 U.S. 629 (1999),
9    the Supreme Court addressed the applicability of Title IX to
10   cases of student-on-student sexual harassment.  In Davis, a fifth
11   grade girl alleged numerous instances of sexual harassment
12   perpetrated by another student.  In analyzing the scope of the
13   school's liability, the Supreme Court found that a school
14   district "may be liable in damages under Title IX only for its
15   own misconduct" as a result of which its students are subjected
16   to harassment.  Id. at 640-41.  Actionable misconduct, according
17   to Davis, is present where a school's "deliberate indifference"
18   fosters an environment where harassment can occur.  Id. at 642.
19   The deliberate indifference threshold is met only where the
20   school's "response to the harassment or lack thereof is clearly
21   unreasonable in light of the known circumstances."  Id. at 648.

22       In Reese v. Jefferson Sch. Dist., 208 F.3d 736 (9th Cir.
23   2000), the Ninth Circuit applied the criteria set forth in Davis
24   to incidents of alleged harassment that were unknown to the
25   school district in question before a group of high school girls
26   were suspended after hiding in the boy's bathroom during a
27   school-sponsored trip at the end of the academic year.
28   ///

10

After the girls were barred from participating in the school's commencement ceremony, they filed suit under Title IX and 42 U.S.C. § 1983, alleging that their actions were in response to earlier harassment directed against them for which the school did nothing.  In assessing the school district's potential liability, the <u>Reese</u> court pointed to four prerequisites established by <u>Davis</u>.  The district must first have "actual knowledge" of the harassment.  Second, the harassment must occur under circumstances where the district exercises substantial control over both the harasser and the context in which the harassment took place.  Third, the harassment must be severe enough to have deprived the victim to educational opportunities or benefits provided by the school.  Finally, a school may not be liable for indirect harassment in which it has no direct participation unless, its deliberate indifference, as defined by <u>Davis</u>, subjects the a student to harassment.  <u>Id.</u> at 739.

In arguing that the circumstances of the present case cannot survive this scrutiny, Defendants argue they had no "actual knowledge" of the harassment because it ended by the time Michelle M. told school officials what was transpiring.  In addition, Defendants assert that even were the requisite knowledge to be conceded, their response cannot be considered deliberately indifferent in any event given the measure Defendant Morris and Defendant Schmitt took to ensure against any further harassment, which purportedly included interviews with the involved parties, advising staff to monitor/observe interaction between the two boys, and separating Jordan and Donnie from any joint classes by the end of the semester.

11

1   Defendants' arguments in this regard fail because
2   Plaintiffs' Title IX claims survive on other grounds.  Defendants
3   focus solely on the school's knowledge of any harassment directed
4   from Jordan S. to Donnie, and whether remedial measures taken
5   once such knowledge were obtained were reasonable as opposed to
6   deliberately indifferent.  Plaintiffs also allege, however, that
7   irrespective of the school's response to Donnie's particular
8   harassment (and whether or not any such harassment may have
9   continued in any way after the school was initially informed of
10  the problem), school officials did have knowledge of questionable
11  behavior on Jordan's part beforehand, and nonetheless elected for
12  whatever reason not to disseminate its own sexual harassment
13  policy in the parent handbook as required by the policy itself as
14  well as applicable California law.

15  As stated above, there is evidence that both Defendants
16  Morris and Schmitt knew about problems involving Jordan S. and
17  Allen Edwards Jr. that occurred during the school year preceding
18  the Fall of 2003 when Donnie alleges that he was sexually
19  harassed by Jordan S.  Paula Schmitt knew about an "ongoing
20  problem" involving Jordan and told Allen's father that his son
21  "wasn't the only one experiencing this."  Mr. Morris was told
22  that Jordan had allegedly stalked Allen and had threatened his
23  life.  Morris also knew that Allen's parents ultimately obtained
24  a temporary restraining order against Jordan S.[10]

25  ///

26

27   [10]As aforestated, Paula Schmitt also admitted to Allen
    Edwards, Sr. that she was aware of an "ongoing problem" involving
28  Jordan

12

Even if not unequivocally sexual in nature, this disturbing behavior had the hallmarks of sexually rooted obsessive behavior. In the face of that knowledge, DJUSD elected to not send its own policy of sexual harassment to students and their families, even though that policy unambiguously required such notification.

The District's Sexual Harassment Policy contained the following provisions concerning notification:

**Notifications**

A copy of the district's sexual harassment policy and regulation shall:

1. Be included in the notifications that are sent to parents/guardians at the beginning of each school year (Education Code 48980; 5 CCR 4917)

2. Be displayed in a prominent location in the main administrative building or other area where notices of district rules, regulations, procedures and standards of conduct are posted (Education Code 231.5)

3. Be provided as part of any orientation program conducted for new students at the beginning of each quarter, semester or summer session (Education Code 231.5)

4. Appear in any school or district publication that sets forth the school's or district's comprehensive rules, regulations and standards of conduct (Education Code 231.5)

5. Be provided to employees and employee organizations

Sexual Harassment Policy, Ex. 2 to Dep. of Robert Morris, as attached within Ex. 5 to the Decl. of Gay Carroll.[11]

---

[11]Defendant Morris identified Exhibit 2 to his Deposition as the school's sexual harassment policy. He indicated the policy was in effect during the 2003-04 school year, and went on to indicate that the policy was posted "in every classroom" of the high school. Morris further testified that as a Board policy, the school's sexual harassment policy is kept within the board policy manual maintained at the district office. (See Morris
(continued...)

1    There is evidence, in the form of language employed within

2    the parent handbook received by Michelle M. at the beginning of

3    the 2003-04 school year (just before Jordan's alleged harassment

4    of Donnie commenced), that the school district decided not to

5    disseminate copies of the sexual harassment policy for budgetary

6    reasons.  There is also evidence that Defendant Morris knew about

7    that omission at some point during the 2003-04 school year,

8    although the precise date when he was told by another parent of

9    such omission is unclear from his deposition testimony.

10   Moreover, the school's own sexual harassment policy, as

11   referenced above, cites to the California Education Code, as well

12   as the California Code of Regulations, with respect to the

13   requirement to provide copies.  California Education Code §

14   48980(g) provides that the notification sent to parents at the

15   beginning of the school term shall "include a copy of the

16   district's written policy on sexual harassment established

17   pursuant to Section 212.6, as it relates to pupils."  The

18   California Code of Regulations, at 5 CCR § 4917, similarly

19   provides that "local agencies are required to notify students,

20   employees, and parents of their written policy prohibiting sexual

21   harassment..."

22   ///

23

24      [11](...continued)
     Dep., 84-86). Consequently it is disingenuous for Defendants to
25   claim that no proper foundation for consideration of the policy
     has been established.  Moreover, as a public record of Defendant
26   DJUSD, judicial notice of the policy is taken pursuant to Federal
     Rule of Evidence 201(b).  The Court need not rule on the
27   remainder of Plaintiffs' request for judicial notice since the
     items at issue were not utilized in rendering its decision in
28   this matter.

14

1    Although Defendant Morris asserts that copies of the sexual

2  harassment policy were posted in virtually every classroom (see

3  Morris Dep., 85:18-25; 94:9-11)),[12] and while Paula Schmitt

4  testified that she went over sexual harassment guidelines during

5  a freshman orientation she provided, the fact remains that a copy

6  of the policy was not provided in each parent handbook as

7  required by the school's own sexual harassment policy and the

8  California Education Code.  In view of Defendants' knowledge of

9  Jordan's prior behavior, this Court cannot say as a matter of law

10  that this shortcoming does not amount to deliberate indifference

11  giving rise to Title IX liability.[13]  Summary Adjudication as to

12  the First and Third Claims is therefore denied.

13  ///

14  ///

15  ///

16  ///

17  ///

18

19    [12]This assertion is disputed by Pamela Padula, who testified
that she walked through Dunsmuir High School's main classrooms in
20  May or early June of 2004 and found that none of the classrooms
were posted with the sexual harassment policy.  (Dep. Of Pamela
21  Padula, 84:2-87:21).

22    [13]While Gebser v. Lago Vista Ind. Sch. Dist., 524 U.S. 274,
291-92 (1998), cited by Defendants, does stand for the
23  proposition that the failure to promulgate a sexual harassment
policy alone does not establish either notice or deliberate
24  indifference for purposes of satisfying the prerequisites for
Title IX liability, that case is distinguishable from the
25  circumstances of the instant matter.  Here, unlike Gebser, we are
not faced with an attempt to attach liability on a school for
26  previously unknown sexual harassment based simply on failure to
establish a policy against sexual harassment.  Rather, this case
27  involves the school's decision to refrain from disseminating its
own previously promulgated policy, in violation of both the
28  policy itself and California law, despite knowledge of behavior
on Jordan's part constituting potential sexual harassment.

15

**2.  Equal Protection Claim**

     In their Second Claim for Relief, Plaintiffs allege that the individually named Defendants intentionally deprived them of equal protection in violation of the Fourteenth Amendment of the United State Constitution.  To state a claim of that nature through 42 U.S.C. § 1983, Plaintiffs must show that Defendants, under color of state law, discriminated against Donnie on the basis of his sex, and that such discrimination was either intentional or occasioned by deliberate indifference.  Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1135 (9th Cir. 2003).  In addition, Plaintiffs must put forward specific factual allegations that establish improper motive.  Id.

     Plaintiffs allege that Defendants "purposefully permitted unlawful peer sexual harassment by failing to take remedial action upon notice of the unlawful harassment." (Pls.' Opp., 14:4-6).  Plaintiffs refer to the arguments submitted in support of their Title IX claims, which include Defendants' purported failure to properly disseminate the school's sexual harassment policy as described above.  Those arguments are sufficient to survive summary judgment on both equal protection and Title IX grounds.

     In Nicole M. v. Martinez Unified Sch. Dist., 964 F. Supp. 1369 (N.D. Cal. 1997), the minor plaintiff argued that the school principal, Guzman, failed to take appropriate steps to prevent her harassment at the hands of another student.

///

///

16

The court rejected Guzman's argument that no intentional discrimination had been demonstrated by such inaction, stating that a decision not to take steps to remedy known harassment may constitute evidence of an intent to discriminate on the basis of sex, which in turn would violate the victim's equal protection rights. Id. at 1383. In addition, Flores makes clear that deliberate indifference may also satisfy the improper motive prong of a cognizable equal protection claim. The Court cannot say as a matter of law that Defendants' conduct in not properly publishing the school's sexual harassment policy does not amount to deliberate indifference, for the same reasons discussed above with respect to Plaintiffs' Title IX claims. Consequently Summary Adjudication as to the Second Claim for Relief is denied.

**3.   Conspiracy Claims**

Plaintiffs' Fourth Cause of Action alleges a conspiracy in violation of 42 U.S.C. § 1985(3) and 1986. In order to successfully bring a claim under § 1985(3), a plaintiff must allege and prove four elements. First, a conspiracy must be established. Second, that conspiracy must be formed for purposes of depriving a plaintiff of equal protection and/or equal privileges and immunities. Third, an act in furtherance of the purported conspiracy has to be shown and fourth, that act must result in injury or damage to the plaintiff. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1999).

///

///

17

1   The second requirement for establishing an actionable conspiracy

2   under § 1985(3) also carries with it the requirement that

3   plaintiff show the conspiracy to be motivated by discriminatory

4   animus towards a protected class.   Id.

5        No evidence has presented in this case, beyond speculation

6   and conjecture,[14] that any of the Defendants entered into a

7   conspiracy designed to deprive Donnie of his equal protection

8   rights.[15]  Conspiracy claims must be supported by factual

9   specificity and here no such specificity is present.  Karim

10  Panahi v. L.A. Police Dept., 839 F.2d at 626.

11       Because Plaintiffs have not established a viable conspiracy

12  claim under §§ 1985(3) and 1986, Summary Adjudication as to

13  Plaintiff's Fourth Cause of Action will also be granted.

14  ///

15  ///

16  ///

17

18       [14]Plaintiffs suggest, for example, that discussions in
    closed door School Board sessions may support a conspiracy
19  without any evidence with which to buttress that assertion.  (See
    Pls.' Opp., p. 17-18).  Plaintiffs further assert, in an effort
20  to bolster their claim, that the decision to not publish the
    sexual harassment policy was somehow conspiratorial in nature,
21  although no evidence has been presented as to who made that
    decision, let alone whether the decision was in consort with
22  others pursuant to a conspiracy.  Finally, even if one assumes
    that the individually named Defendants failed to take appropriate
23  protective action on Donnie's behalf, that does not mean there
    was a conspiracy in that regard, as Plaintiffs suggest without
24  any supporting evidence.

25       [15]While Plaintiffs allege a violation of § 1986 in addition
    to § 1985(3), § 1986 simply imposes liability on anyone who knows
26  of an impending violation of § 1985 but neglects or refuses to
    prevent the violation.  Hence a claim can be stated under § 1986
27  only if a valid claim is brought under § 1985.  Karim-Panahi v.
    L.A. Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).  The same
28  criteria therefore apply to claims brought under both statutes.

**4.   State Law Claims**

In their Fifth and Sixth Causes of Action, respectively, Plaintiffs assert state claims under California's Unruh and Ralph Civil Rights Acts.   Turning first to the Unruh Act, California Civil Code § 51 is a general civil rights statute providing that "[A]ll persons... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."[16]   In accord with the broad sweep of the statutory language itself, the California Supreme Court has directed that the term "business establishment" be interpreted "in the broadest sense reasonably possible.   Isbister v. Boys' Club of Santa Cruz, Inc., 40 Cal. 3d 72, 78 (1985).   Also consistent with this expansive interpretation is the consensus that public schools must be deemed business establishments within the purview of the Unruh Act.   See Nicole M., 964 F. Supp. at 1388;   Sullivan v. Vallejo Unified Sch. Dist., 731 F. Supp. 947, 952 (E.D. Cal. 1990) (relying on Isbister, the Eastern District held that public schools are "business establishments" within the meaning of the Unruh Act).

In Nicole M., the Northern District construed an inadequate response to complaints of sexual harassment as a denial of "advantages, facilities, privileges or services" protected by the Unruh Act.

---

[16]Although Plaintiffs also allege a violation of Civil Code § 52, that statute merely provides for damages if a violation of § 51 is established.

Although the Unruh Act prohibits only intentional discrimination and not practices merely having a disparate impact on one class of persons (<u>Harris v. Capital Growth Investors XIV</u>, 52 Cal. 3d 1142, 1149, 1172 (1991), the <u>Nicole M.</u> court rejected any argument that allegations of inadequate action in response to complaints of sexual harassment cannot rise to the level of intentional discrimination for purposes of the Unruh Act.   <u>Nicole M.</u>, 964 F. Supp. at 1389.

As detailed above in connection with Plaintiffs' Title IX claims, Plaintiffs do have a viable claim that Defendants responded inadequately to previous incidents involving Jordan S. by refraining from disseminating a sexual harassment policy, as required by the school's own policy and California law that could potentially have protected Donnie against harassment.   Those same arguments support an Unruh Act claim as well, and mandate that Defendants' request for Summary Adjudication as to the Plaintiffs' Fifth Claim be denied.

Plaintiffs' Sixth Claim for Relief, for violation of the Ralph Civil Rights Act (Cal. Civ. Code § 51.7), similarly survives scrutiny on summary judgment.   Section 51.7 expands upon the Unruh Act[17] by specifying that individuals should not only be afforded unfettered access to public accommodations but should also be free from any violence, or threat thereof, because of their particular characteristics.   Section 51.7 provides, in pertinent part, as follows:

---

[17]In fact, the Ralph Civil Rights Act, while enacted later than the original portion of the Unruh Act at Cal Civ. Code § 51, is considered to be a component of the Unruh Act.   <u>McCalden v. Cal. Library Ass'n</u>, 955 F.2d 1214, 1220-21 (9th Cir. 1990).

"All persons... have the right to be free of any violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability or position in a labor dispute, or because another person perceives them to have one or more of those characteristics.   The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive."

In the instant matter, Donnie was physically accosted by Jordan S., who he claims twisted his arm on numerous occasions when Donnie refused Jordan's request that Donnie expose himself. Those actions may be considered either violent, intimidating, or both for purposes of liability under the Ralph Civil Rights Act. Defendants' failure to follow its own internal policy, not to mention California law, in properly disseminating a sexual harassment policy may have contributed to the environment in which Donnie was harassed.   This is enough to survive summary judgment.

**5.   Claims Against Defendants Paganini and Raine**

Defendants Paganini and Raine were two of the five members of the School Board who oversaw Defendant DJUSD during the 2003-04 academic year in which Donnie claims he was harassed.   Both are named as individual defendants in Plaintiffs' lawsuit, along with Defendants Morris and Schmitt.   There is no evidence, however, that either Paganini or Raine knew about Donnie's harassment until after his mother reported it to Morris and Schmitt.   As stated above, Donnie testified in his deposition that no further direct harassment occurred at school after the problem was reported to school officials.

21

There also is no evidence that either Paganini or Raine knew about any previous harassment perpetrated by Jordan.  Although Defendant Paganini did testify that his son Andrew told him had been approached by Jordan in the high school locker room about drugs, there was no indication from Andrew that the encounter had any sexual component.[18]  (Paganini Dep., 23:2-14; 24:19-25). Moreover, and in any event, there is no evidence that the School Board or its members exercised authority over the scope of discipline meted students.  That responsibility is delegated to members of the school administration like Defendant Morris.

There is also no evidence that either Paganini or Raine had any personal role in the decision to refrain from publishing the school's sexual harassment policy in the parent's handbook sent to all school families at the beginning of the academic year.[19] Because here is simply no basis for their individual inclusion in this lawsuit, summary judgment in favor of Defendants Paganini and Raine will be granted.

///

///

///

///

///

///

///

---

[18]Any testimony from Donnie that Andrew Paganini indicated otherwise is sheer hearsay.

[19]Defendant Raine testified that the handbook disseminated at the beginning of the year is prepared by school staff.  (Raine Dep., 61:23-25).

**CONCLUSION**

For all the foregoing reasons, Summary Judgment is DENIED as to Defendants DJUSD, Morris and Schmitt but GRANTED as to Defendants Paganini and Raine.  Summary Adjudication is GRANTED as to Plaintiffs' Fourth Claim for Relief based upon conspiracy, but is otherwise DENIED.

IT IS SO ORDERED.

DATED: October 12, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE